May it please the Court, Marjorie Sears, 4th Defendant, OHSU. Your Honor, this case involves both an appeal and a cross-appeal, and if I understand, FRAP 34-D, I'm to address both issues? Yes. So beginning with our appeal, this appeal involves the application of the Oregon Court Claims Cap to the Oregon, the former Oregon whistleblower statute. Under Oregon law and Oregon cases, Chapter 659 violations are torts within the meaning of the Tort Claims Act for both purposes of both notice requirements and for purposes of the damage cap. And this was most recently decided in the Anglin case that is cited in the blue brief. So according to the Anglin opinion, the damage cap would apply in this case. The trial court nonetheless decided differently based upon the district court's decision in a case called Draper v. Astoria School District. What was the timing between Draper and Griffin and the Court of Appeals case, Anglin, that you rely on? Did the district court decide that before Anglin? Anglin came after Draper. And Griffin also? I believe Griffin was before. I'm sorry, I thought you might know that. Griffin was before and Draper was 98. So Griffin was before Draper. I have one procedural question. Am I correct that, although it used to be different a number of decades ago, that the current Ninth Circuit law says that in a diversity case, we on an appeal are not supposed to give any special deference to a district court that's resident within the state whose law is being determined? I don't know the answer to that case, but I do know that you are supposed to give deference to the Oregon courts. No, that wasn't my question. I don't know if the district court is in the District of Oregon and is interpreting Oregon law. You won't remember this, probably, but there was a time when the Ninth Circuit used to say it could deference to a district court in diversity matters in that state. But then my impression was that that was explicitly overruled by the Ninth Circuit or the Supreme Court, and that the law now provides for no, that we give no deference to the district court in that matter. I don't know the answer to that, Your Honor. However, it is our position that the Draper decision was incorrect, and so it would be subject to no deference of any kind. In the Draper decision, the court acknowledged that Chapter 659 violations are torts for purposes of the Torklins Act, but the court found there was an irreconcilable conflict between the two statutes, so that there was an implied repeal of the damage cap for purposes of the Whistleblower Act. However, implied repeal is not favored. The court is to make every effort to harmonize the two statutes. In this case, the two statutes can be harmonized, as pointed out in our brief, by ruling that the damages are $250 or actual damages, whichever is greater, up to the limit of the Torklins Act. And this would also take into consideration the PGE v. Boley methodology for looking at the meaning of a statute, in that it takes into account the context, and Plaintiff has acknowledged that the Torklins Act is part of the context of the Whistleblower Act, and so reading it in context, it would apply. Also, I wanted to point out that in the Anglin case, the court was discussing the statute of the former ORS 659-121, which is set forth in the addendum to the red brief. And in former ORS 659-121, under which the Anglin case was brought, under subsection 2, it's provided that any person claiming to be aggrieved by alleged violations of this particular statute, under which Anglin was brought, may file a civil action circuit court to recover compensatory damages or $200, whichever is greater. So there was a similar provision, although it was not discussed by the Anglin court. There was a similar provision in place, and the court did not discuss one way or another whether there was a conflict, but I want you to be aware that there was a similar provision that would have applied in the Anglin case. Isn't your best argument that the Court of Appeals has interpreted the Tork Claims Act as a limit on liability, not merely a cap on damages, and that the surface, that's the surface case? Is that your best argument, that because there cannot be a conflict, because the Whistleblowers Act referred to damages, whereas the Tork Claims Act refers to liability, limitations of liability? It's a very good argument, Your Honor. And it's similar to what was decided in the Farrow and Griffin cases, which is that where there's a conflict between Chapter 659 and the Oregon Tork Claims Act, the Oregon Tork Claims Act is to prevail. And so I think that's billing it the same thing with slightly different reasoning. If the Court has no further questions about the statutory argument, I'll move on to the cross appeal. I have a sort of basic question on the cross appeal that I'd like to address to both counsel, because both of you briefed the reinstatement question more or less as if we were reviewing for abusive discretion, which is the federal standard for reinstatement claims. But if we are looking at reinstatement under state law, why wouldn't we apply state law to the standard of review for reinstatement claims? And if we did that, would we be reviewing de novo as in other equitable matters? And that may come out of left field for both of you, because it's not something that we asked for additional briefing on. And I have not reviewed the state law on that issue, so I just am not prepared to answer. I'd be happy to do additional briefing on it, but I don't have the answers to the question right now, Your Honor. We are in federal court, and we're seeking reinstatement by a federal judge. And so I think both parties assumed that was the law that was going to be applied. You're the appellee on this cross claim, right? Yes. Then you're going to answer to the argument later on, rather than now. Is that right? Actually, I understood I was supposed to speak to both. If my colleagues would prefer it that way, you can save the remainder of your time for rebuttal. That would be fine with me. Why don't we do that? That's all right. It's gold also. Okay. Thank you. I'm going to answer the argument. Mr. Ravkin? Yes, Your Honor. Good morning, Your Honors, and may it please the Court. I'm Jeff Batchelor representing Dr. Ravkin. Let me start with the issue of statutory construction. And I think we can best make our point on legislative intent by looking at the only two statutes that I've found that are directed specifically to public employees and employers, in contrast to the cases that Scurgeon is talking about, where the conflict has been between the Tort Claims Act and statutes that apply to all employers, not just public employers. And I'm looking, Your Honors, at first the statute we have at Addendum 11, which is the Tort Claims, which is the whistleblower statute. And what the whistleblower statute does, Your Honor, again, this obviously is directed to public employers only. It provides the damage provision that we've been talking about, damages of $200 or actual damages, whichever is greater. It provides for a 90-day statute of limitations. And it has no provision for notice, as you would expect with such a short wire on the statute of limitations. So we have a statute that's really stand-alone. Again, it's the only one of two statutes that apply directly or exclusively. Is there any question, though, as to whether a claim under that statute is a tort? I don't think there is, Judge. It is a tort? Yes, I think it's a tort. So then why wouldn't the Oregon Tort Claims Act, if that has a limit of liability, why wouldn't that just cover it? Because, again, I've got the one statement I just made about this stand-alone statute that has created a tort. But then, Your Honors, I'd ask you, you don't need to look right now, but I'm looking at Addendum 4, and that's the only other statute that applies only to public employers. It prevents, it prescribes discrimination in public education. That statute, like the statute we're concerned with, creates the right of action. I think it's in Subsection 3. Creates the right of action, provides for damages, provides a statute of limitations, and it says that the claim there is subject to the limit of liability in the Oregon Tort Claims Act. Counsel, I guess the thing that I'm having the most difficulty with is squaring the reasoning that you're asking us to adopt with the reasoning in Griffin v. TriMet, which obviously is on a slightly different question, but suggests that the civil rights claim is tort, suggests that the limit is on liability, not tort damages, and suggests further that whenever there's a conflict, the legislature intended to protect the public fisc, and that was the overarching public policy. I guess I have difficulty putting that next to what you're asking us to adopt. And I'm coming back to your question, too, Judge Altshuler. I don't think it's significant that in our context that there's a limit on liability in the Tort Claims Act. Counsel, would you speak up, please? Yes, I'm sorry, Judge. I think that that is a recording microphone rather than an amplifying microphone. See, I'm much older than my colleague. I understand, as your colleague in the earlier presentation, to drop your voice. Just help me out. I'm going to do my best, believe me. I was saying that I don't think the distinction in Griffin between liability and damages is significant here, because damages is a part of liability. So I don't think, Judge Altshuler, really in answer to your question, I don't think that's a significant distinction for our purposes. I'm just referring to the decision in the surface case. I'm sorry. It sounds like the same concept to me. Does the Tort Claim Act mean that you can't have liability beyond a specified amount of damages? Well, I think so. I mean, I think that's the conflict in our case, Judge. I mean, there's a direct conflict. So we have to treat your whistleblower statute differently in Dr. Rapkin's position. Yes, we do. And, Judge, I'm suggesting that the reason we do is because the legislature has made a very direct statement. The legislature is the body that determines which statute trumps the other. Right. And in this case, Judge, in contrast to the other, it's made a statement that the Tort Claims Act is inferior to the whistleblower. How has it made that statement, though? It's not made it explicitly. It hasn't made it explicitly. So your position is it's made it implicitly because in another statute they expressly said apply the Tort Claims Act. That's part of it. And that – I'm sorry, Judge. No, I just want to make sure I'm understanding we're dealing with a theory of implied – implied repeal. Yes. And nothing more than that. Yes. Well, sir, while we're talking about that, I'd like you to comment on the legislative history, especially Senator Hill, where he mentioned specifically in the discussion of the Whistleblower Act, made a reference to the damages to the extent as allowed by 30.270, which is the Organ Tort Claims Act. And then the question was whether they should make a specific reference to it. No, that's for any public body. It applies to any public body. Would you like to comment on that excerpt from the – Sure. Yes, I would. That – if you listen to the tape, I don't expect Your Honor to do that. But if you listen to the tape, you will see that it's a very hurried discussion. Some or all of the senators had commitments. They discussed the topics that are set out in the opening brief and discussed in our answering brief. They discussed the topics, but at the end of the day, Senator Hill says, we need to take more testimony on this, we need to have further hearings on this, and they left. So what we know from that legislative history, that 30-minute meeting of the Senate Labor Committee, which was discussing a bill that had no damage provision, what we know is that there was that discussion, and you can infer that at the end of that discussion, which occurred – I'm sorry – which occurred whenever it did months later, the legislature in this statute, in contrast to the statute that provides for liability in public education, decided not to make this statute subject to the tort claim limit. So we think the only thing that you can really take – Well, the conversation – the conversation says it wasn't going to be necessary to make the reference. I'm just making that – that is sort of strong evidence that there wasn't an intention to have an implied repeal. I don't think so, Judge. Okay. I really don't because, as I say, this is probably the first committee hearing. It's certainly very early. Right. And it's – as you can see from the quotations and from the descriptions of what went on, it's a freewheeling discussion. You had people at the opposite ends of the political spectrum talking about how this was going to play out. And so I don't think – I don't think the legislative history is significant beyond the fact that we had a discussion very early on. Well, let's try to boil this argument down to the real essentials. You have conceded that the Whistleblower Act falls within the definition of tort. Is that right? That's correct. Okay. And the question is, here, there's no question that the OHSU breached a legal duty in your theory. That's correct. To bring it into a tort. Okay. Then we come into this business of whether the OTCA necessarily limits the amount of damages but does so only in necessary consequence of the statute's limitation on liability. As far as I'm concerned, that's not even debatable. That is organ law. Now, that being so, your only suggestion is that because the Whistleblower Act came after the passage of the Tort Claims Act, that this was an implied legislative repeal for the purpose of the Whistleblower Act, the General Tort Act. Isn't that your argument? It is. Is that a fair summary of your argument? It's a fair summary of my argument. May I add one point, though, Judge? When Judge Stewart wrote the opinion in Draper, which is basically the opinion that Judge Hanner adopted as his own in this case, the reasoning for it, when she finished the discussion of this statute and concluded that it was an implied repealer of the tort claim limit, she wrote that, if I'm wrong, the legislature can correct this decision. It can amend the statute. And indeed, in 2001, the legislature did amend the statute, and it made provision for punitive damages, which is not present in the statute we're dealing with today. Right. So that decision, Judge, I assume was made with knowledge or that the legislature knew the Anglin decision, or the Farrow decision, I think it is, was out there, which said that at least in the employment discrimination statutes, the Tort Claims Act trumps the punitive damages or trumps the provision for punitive damages. So presumably the legislature was aware of that. But did the legislature in that act come up with a statute or an amendment saying that the provisions of the Oregon Tort Claims Act will not apply? No, but it took. So the argument cuts two ways, doesn't it? I don't think so, Judge, because Judge Stewart, you know, asked the legislature to amend the statute. She were wrong in her interpretation of it, and it did not amend the part that she. Well, do we have a principle? I mean, I think there's probably some precedent that the we presume Congress watches what the U.S. Supreme Court says. Is there any precedent that says a state legislature is presumed to know what a federal district court in a diversity case has said their law was? Because for me, at least, I don't I can't put any weight on a judge saying the legislature can amend this if they don't like my opinion. I think that's pretty much irrelevant. Question is whether we have to presume that the legislature reads federal district court opinions. And if so, whether inaction as opposed to confirmation means anything. What am I missing on that? I don't think there's a presumption of anything, Judge. But I would think that the folks who lobby for this legislation or against this legislation, I'm not saying they did, Judge, but they would bring this to the attention. Lots of times legislatures do things or don't do things for all kinds of reasons that us mortals would find strange. I couldn't agree more. It's the nature of the legislative process, and it's kind of hard to draw that. Let me just get back to a first principle here. Make sure I got this right. Am I right that conceptually what we're trying to do here is predict what the Oregon Supreme Court would rule if it were presented with this precise issue, whether the Whistleblower Act carves out an exception to the Forced Claims Act? Yes. And if that's the case, what's your best argument based on what Oregon courts of appeals have done that would be predictive as to what the Oregon Supreme Court would do? Or is it that you think the Oregon Supreme Court would follow the district court case? I don't think the Oregon Court of Appeals decisions on the subject we're talking about are predictive of what the Oregon Supreme Court would do. Because they're not precisely on point or something like that? Not only that, Judge. I mean, all of the cases we've mentioned this morning have not talked about implied repealer. I don't think you'll – I may be wrong, but I don't think you'll find those words in any of the opinions we've talked about. But you still have to deal with Griffin. I do, yeah. I hope Your Honor will let me have a few minutes to talk about my cross appeal, which is – Yes, I will. That's fair. I do have to deal with Griffin. And Griffin, of course, said that attorney fees are part of the liability, and therefore attorney fees are limited. It said the legislature has expressed one policy in the discrimination statutes that is relied for attorney fees, and it's expressed another policy in the Tort Claims Act. And the court said you've got to make a decision, and the Tort Claims Act prevails. Now, in the Farrow case, F-A-R-O, which is in the other brief, the court held that the provision for punity damages in the employment discrimination statutes was trumped by the Oregon Tort Claims Act limit on liability based on Griffin. It said they're in conflict, and we think Griffin requires us to uphold the tort claim limit. That's all the analysis there was. I mean, that's all the analysis you need at one level. That case then went up to the Oregon Supreme Court. And Judge Graber, you know what was going on. I don't. But it seems to me that an issue for the Oregon Supreme Court was whether the Tort Claims Act trumps the punity damage provision in the Employment Act. The case went up to the Supreme Court, where it sat for two years. And at the end of two years, the Court of Appeals was affirmed by an equally divided court. So I don't think if you look at the Farrow case, which sets up this conflict that Judge Aldister, you referred to, you get a decision, and it goes to the Supreme Court, and we get a three-to-three split. I think that case in the Court of Appeals is not very predictive of what the Supreme Court would do. And I think it's more likely that the Supreme Court would look at what we've written and said this morning, and particularly when you lay these two statutes side by side, the only statutes that deal with public employers. Those, to me, send a very strong signal that in these circumstances, the legislature has intended to crunch the Tort Claims Act. Counsel, you've used more than your time with this issue. And how about can you summarize in, say, three or four minutes your points on Reed's statement? I'm pretty sure I can't, but I want to make one point. You know, we understand that we are against a very severe standard of review. So I'm not up here trying to ask for ñ I haven't asked for a de novo review, Judge, which you would get under the state law. Because? It's an equitable claim. No, but why ñ we have the federal standard of review because we're a federal court, even though it's a state claim. That's your review of the cases. That's what I've said. You know, when you ask questions, as you have this morning, I wonder if maybe I've overlooked something. But we've proceeded on the basis that this is sort of a procedural case. Review for abusive discretion on this issue. Yes, or clear error of law. And that's really the one point I want to make, one we know ñ If there's a clear error of law, it's an abusive discretion. Yeah, that's true, too. So here's the one point I want to make about Judge Panner's opinion. Judge Panner, in his opinion, was very clear that he validated the jury's verdict. He said, in considering all these factors, I want to begin by confirming the validity of the jury's verdict. The court is persuaded that plaintiff fully established that he was discharged because of his statements of concern regarding patient care under Dr. Orloff. That's true in every reinstatement case. Otherwise, you'd never get to the issue of remedy. So where does that get you? Let me read one more statement, Judge. Just one more sentence after that. Judge Panner says that the plaintiff attempted to address his concerns through the internal grievance procedure, was thwarted at every regard, and he talks about the defendant going to great lengths to cover up the problem and undermine Dr. Rabkin. So Judge Panner has made a very explicit statement in his opinion that he is confirming what the jury did. Now, and I'm looking at ER 32, Your Honors. But then when he gets to the point of considering reinstatement and talking about the turmoil and so forth, he says, the most persuasive testimony on the difficulty that a plaintiff's reinstatement would pose was elicited from Dr. Lloyd Magnuson, Associate Dean and the OHSU Medical Director. Dr. Magnuson explained that it is extremely rare to find consensus in academia for anything, but the overwhelming consensus from the OHSU administrators was that the plaintiff was not fit for the role of a director. So then you look at Dr. Magnuson's testimony, and what does Dr. Magnuson say? And it's really in a capsule in SER 445. This consensus was the five administrators plus Dr. Cron, the fellow, the doctor from the Mayo Clinic. That was the consensus. And the basis of their consensus was couldn't handle Dr. Orloff, was taking too much money out of the university, was unable to recruit, this whole string of things why Dr. Rapkin could not act as administrator. Those were the very reasons that they gave in the trial court, you know, in the jury. The jury rejected those reasons, said they were pretextual. And what happened, as Judge Panner said in his opinion, the jury found that those reasons that built this consensus were all found to be pretextual reasons. Yet Judge Panner, in determining that reinstatement is inappropriate because there was a loss of confidence and therefore the result in chaos, relied on this very testimony that the jury rejected. So that's the one point. We've made other points in our brief, but to me that is a clear error of law because Judge Panner is reasoning from a premise that the jury rejected, and Judge Panner said he had rejected also because he accepted the jury's verdict. Thank you, counsel. Thank you. Ms. Spears, you have some rebuttal time. With regard to the statutory question, the same argument that counsel is making now about the education statute was made in the annual case and was rejected by the court. The court recited that plaintiff argues that because ORS 659-121, which authorizes actions such as this contains no reference to the OTCA, such a claim is not subject to the OTCA limitation. He points to another discrimination statute, ORS 659-160, which is the one pointed to by plaintiff, that does contain a specific reference to the OTCA and argues that an inference may be drawn that the legislature did not intend to include actions under 659-121 within the OTCA limitation. And the court rejected that and went on to find that the OTCA cap applied. So the same argument has already been rejected, at least by the Oregon Court of Appeals. On the cross appeal, could you address, please, the argument that counsel just last presented, basically that it appears that Judge Panner is relying on factual premise or testimony that necessarily was rejected by a jury. Is the time frame for the testimony the same or is it different? I mean, are they talking about the same events? I'm sorry? Are they talking about the reasons given about nonacceptance of him as a director? Is that testimony has to remedy the same testimony that the jury rejected? There was some additional testimony at the reinstatement hearing. The court considered both the trial testimony and the reinstatement testimony in reaching the reinstatement decision, so there was some additional testimony. How do you deal with the argument that it is a clear error if his reasoning is relying on something the jury rejected? The court was not doing that. I mean, my first response to that is if a court is always bound by the jury verdict in cases like this and in every instance where there is an award on the merits on the whistleblower claim, if the court is bound by that, then there would be no place for a judge to ever exercise discretion as to the reinstatement question. But more particularly, there were a number of reasons that the court gave for not allowing reinstatement, not just the ones that counsel just spoke to. The court found that it might cause chaos in the department. This was based on several pieces of evidence. One was that Drs. Orloff and Hamm might leave the department if Dr. Rafferty were reinstated. It was based upon the difficulty in those circumstances of recruiting new doctors because Dr. Hamm testified at the reinstatement hearing that it's a small community, everyone knows what's happened, and it would be tough to recruit more doctors. Everybody agreed that three doctors were needed to make the program run smoothly, and if it was going to be difficult to recruit, this would be a real problem for the department. There also was the inability of Drs. Orloff and Rafferty to get along, which predated Dr. Rafferty's reports. There's a great deal of testimony that their inability to get along began as early as 1996, right after Dr. Reed left. Further, Plaintiff testified that in order for the program to operate at its best in terms of patient care, it was important for the leader of the program to be able to interact effectively with the other two surgeons. And that's the transcript, volume 1, pages 174, 75. And pursuant to Plaintiff's own testimony, he and Dr. Orloff were having professional visits to his room by 1999, and that was before he had made any report. The court also took into consideration the fact that it was a one-year appointment, and the court took into consideration the fact that Dr. Ham would be displaced. So the court took a number of factors into consideration, including factors beyond what the jury had determined. Thank you. We appreciate some very good arguments by both parties in that case, and the case just argued is submitted. We will take a ten-minute recess before hearing the remainder of the calendar.
judges: Aldisert , Graber, Gould